UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 10-22220-CIV-KING

JOSE L. OCEGUERA,

      Plaintiff,

v.

ALUTIIQ SECURITY & TECHNOLOGY, LLC,
d/b/a ALUTIIQ-MELE, an Alaska corporation, and
SSA SECURITY, INC., a California corporation d/b/a
SECURITY SERVICES OF AMERICA,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE comes before the Court upon the respective Motions to Dismiss the Amended Complaint filed by Defendants Alutiiq Security & Technology, LLC ("AST") and Alutiiq-Mele ("A-M"). AST filed its motion to dismiss on August 23, 2010 (D.E. #12), Plaintiff responded on August 31, 2010 (D.E. #16), and AST replied on September 9, 2010. (D.E. #20). A-M filed its motion on September 21, 2010 (D.E. #24), and Plaintiff responded the same day (D.E. #27). Because the issues relevant to the motions by AST and A-M substantially overlap, they are addressed in a single order.[1]

---

[1]Defendant SSA Security Services, Inc. ("SSA") also moved to dismiss the Amended Complaint on September 20, 2010. (D.E. #22). Plaintiff responded on September 21, 2010. (D.E. #23). SSA's Motion to Dismiss was granted on September 20, 2010. (D.E. #29 ).

## I.    Background

Plaintiff Oceguera filed his original Complaint solely against Defendant AST on July 6, 2010, and asserted a single claim for intentional interference with a business relationship. (D.E. #1). Plaintiff alleged that in June 2006, he worked on a federal security contract to protect federal buildings in downtown Miami. *Id.*, ¶ 6. He alleged he was an employee of SSA, which was a sub-contractor of Defendant AST. *Id.* Plaintiff alleged that he took a required gun qualification test in June 2006, and that an AST employee, Mr. Elias, told Plaintiff that he had not passed the test. *Id.*, ¶ 9. When Plaintiff took the test again on July 7, 2006, a federal government employee told Plaintiff that he passed the test, but Mr. Elias again told Plaintiff that he did not pass. *Id.*, ¶ 10. Plaintiff was terminated on July 7, 2006 on the ground that he failed the test. *Id.* ¶ 11. Plaintiff, who is 63 years old, alleges that he was replaced by Hollman Cortez, who was then approximately 41 years old. *Id.* ¶ 11, 13. Plaintiff claims that "Defendant's intentionally false and age-discriminatory report that [Plaintiff] failed the July 7, 2006 gun qualification test constituted an intentional and unjustified interference with Plaintiff's relationship with the federal government and [SSA]" because "Defendant induced the federal government to disqualify [Plaintiff] from working as a security officer." *Id.*, ¶ 18, 15.

Defendant AST moved to dismiss the Complaint on August 4, 2010 (D.E. #4), and in lieu of responding, Plaintiff filed the First Amended Complaint on August 6, 2010.

(D.E. #6). In the Amended Complaint, Plaintiff added SSA and A-M as defendants, and asserted the same claims for intentional interference with a business relationship against all three Defendants. *Id.* Plaintiff also added new claims for race discrimination under 42 U.S.C. § 1981 against all three Defendants. *Id.* With respect to the section 1981 claims, he alleged that his supervisors falsely reported that he failed the gun test on July 7, 2006 so that he could be terminated for refusing to discipline Haitian employees without good cause. *Id.*, ¶¶ 11–2, 15–21.

The relationship between the three Defendants is disputed. Plaintiff alleges in his Amended Complaint that he was an employee of SSA, "which was then formally a sub-contractor of [A-M] . . . and informally a sub-contractor of [AST]." (D.E. #6, ¶ 6). According to Defendant AST, SSA was never a sub-contractor of AST, and AST "had no involvement whatsoever in . . . the contracts at issue." (D.E. #4). Defendant AST claims that AST and A-M are both wholly-owned subsidiaries of the same parent company, Alutiiq LLC, but are otherwise unrelated. (D.E. #4, Exh. #B). Defendant AST maintains that Plaintiff Oceguera has sued the wrong entity. (D.E. #4, D.E. #12).

## II. Legal Standard

"For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey,* 334 F.3d 1246, 1247 (11th Cir. 2003). A complaint may be dismissed only if

3

the facts as pleaded fail to state a facially plausible claim to relief. *See Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating former "unless it appears beyond a doubt that the plaintiff can prove no set of facts" standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face"); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) ("Pleadings must be something more than an ... exercise in the conceivable.") (quoting *United States v. Students Challenging Regulatory Ag. Proc.,* 412 U.S. 669, 688 (1973)). Finally, in analyzing the sufficiency of the complaint, the Court limits its consideration to "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004).

## III. Discussion

### A. Section 1981 Claims

Section 1981 provides, in part, that "all persons in the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). In the employment context, courts recognize claims under Section 1981 for discrimination and retaliation.[2] Plaintiff does not state in the Amended

---

[2]Although SSA, not AST or A-M, directly employed Plaintiff, the Eleventh Circuit has held that "parties other than a plaintiff's actual or potential employer could be liable under Title VII if they control the plaintiff's access to employment and deny that access based on unlawful criteria." *Zaklama v. Mt. Sinai Med. Ctr.,* 842 F.2d 291, 294 (11th Cir. 1988) (quoting *Sibley Memorial Hosp. v. Wilson,* 488 F.2d 1338 (D.C. Cir. 1973)). The

Complaint which legal theory or theories under Section 1981 he is claiming. However, he fails to state a claim for either.

### 1. Discrimination

To establish a *prima facie* case of discrimination under Section 1981, a Plaintiff must allege that: "(1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) [he] was qualified for the job or benefit at issue." *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842–3 (11th Cir. 2000). Plaintiff has only alleged, and neither defendant disputes, that he was subjected to an adverse employment action.

Plaintiff has not alleged that he is a member of a protected class, and in fact failed to plead his race at all in the Amended Complaint. (D.E. #6). He did not allege that any other similarly-situated employees were treated more favorably, i.e., that any employees who also failed the gun test were not fired. *See id.* Finally, while Plaintiff did plead that he "was qualified for the job of security officer under the federal contract," (D.E. #6, ¶22), other allegations in the Amended Complaint directly contradict that assertion. Plaintiff alleges that he failed to earn a passing score on the required gun test twice, and

---

Court found that the same reasoning applied to Section 1981 claims: "Nothing in the language of section 1981 suggests it should be limited to situations where the parties occupy a direct employment relationship." *Id.* at 295. It is not clear whether AST and A-M meet the *Sibley* "control test," but even if they do, Plaintiff has failed to state a claim against either defendant.

was fired as a result. *Id.*, ¶9, 11, 12. In support of his statement that he was qualified for the job, Plaintiff alleges only that "Oceguera was told he had a score which was very close to the minimum passing score of 200" and that "a federal government FPS officer . . . told Oceguera not to worry, that Oceguera had passed the test." *See id.* In the light most favorable to Plaintiff, he has not alleged that he was qualified for the security officer job. A score "close to the minimum passing score" is not a passing score, and Plaintiff's conclusory statement that he was qualified does not save his claim. *See United States v. Air Florida, Inc.*, 534 F.Supp. 17, 20 (S.D. Fla. 1982) ("On a motion to dismiss . . . the court need not accept conclusions of law or sweeping legal conclusions cast in the form of factual allegations.").

### 2. Retaliation

A plaintiff who is required to participate in discrimination as part of his employment, refuses to do so, and is then retaliated against may sue under Section 1981. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1993) (allowing plaintiffs' claims for retaliation resulting from their refusal to discriminate to proceed). Retaliation claims under Section 1981 are governed by the three-part framework laid out in *McDonnell-Douglas v. Green*, 411 U.S. 792 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). "Under this framework, a plaintiff alleging retaliation must first establish a *prima facie* case by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Id.* at 1307–8. The

6

establishment of a *prima facie* case creates a presumption that the adverse action was the result of an intent to retaliate, and the burden of production then shifts to the defendant to rebut the presumption with a legitimate, non-discriminatory reason for the adverse action. *Id.* at 1308. If the presumption is rebutted, the plaintiff "has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions." *Id.*

Plaintiff alleges that two people, Lt. Carlos Rodriguez and Captain Barry Hirsch, "wanted to clean house" and that they needed to get rid of three Black employees. (D.E. #6, ¶ 15–6). Plaintiff claims he told Rodriguez and Hirsch that the Black employees were doing their jobs. *Id.*, ¶¶17, 21. Assuming that Plaintiff's statement to Rodriguez and Hirsch constituted "protected activity," Plaintiff has failed to allege a causal connection between the statement and his termination. The "causal connection" element merely requires that "the plaintiff establish that the protected activity and the adverse action were not wholly unrelated." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir. 2008). To make that showing, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.*

7

Here, Plaintiff alleges that an "AMS"[3] supervisor named Mr. Elias[4] informed Plaintiff that he had not passed the gun test. (D.E. #6, ¶¶9, 11) However, Plaintiff does not allege that Mr. Elias knew about Plaintiff's conversation with Rodriguez and Hirsch, or even that Mr. Elias actually made the decision to terminate him. *See id.* Because Plaintiff has not pled who the decision maker was, and that the decision maker was aware of the conversation with Rodriguez and Hirsch, Plaintiff has not made out a *prima facie* case for retaliation. Furthermore, even if the conversation at issue and Plaintiff's termination were connected, it remains unclear how Defendants AST and A-M could be liable. Plaintiff alleged that Hirsch was an employee of SSA when he made the statements to Plaintiff, and Plaintiff does not allege who Rodriguez's employer was. (D.E. #6, ¶16). There are no allegations connecting the claimed refusal to discriminate to Defendants.

## B. Tortious Interference with a Business Relationship

To establish a claim of tortious interference, a plaintiff must prove: (1) the existence of a business relationship; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff as a result of the interference. *KMS*

---

[3]In the Amended Complaint, Plaintiff refers to AST and A-M as a single entity, "AMS." (D.E. #6, ¶8). Defendants AST and A-M both object to this classification, and state that AST and A-M are two separate entities. (D.E. #12, n.5; D.E. #24, n.2).

[4]Plaintiff alleged in the original complaint that Mr. Elias was an employee of AST only. (D.E. #1, ¶9).

8

*Restaurant Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004) (citing *Seminole Tribe v. Times Pub. Co.*, 780 So. 2d 310, 315 (Fla. 4th DCA 2001)).

Here, the business relationship at issue is between Plaintiff and the Department of Homeland Security ("DHS"), which Plaintiff alleges contracted with A-M and AST to provide security for federal buildings in Miami. (D.E. #6, ¶ 5–6, 33). The purported interference is the allegedly "false and age-discriminatory report that Plaintiff failed the July 7, 2006 gun test." *Id.*, ¶ 33. Plaintiff claims the interference "induced the Department of Homeland Security to disqualify Oceguera from working as a security officer contract employee" and "caused damage to Oceguera, such as lost income." *Id.*, ¶ 30, 33.

These allegations implicate the third element of a tortious interference claim, intentional and unjustified interference. For an interference to be unjustified, "the interfering defendant must be a third party, a stranger to the business relationship." *Romika-USA v. HSBC Bank USA, N.A.*, 514 F.Supp. 2d 1334, 1338 (S.D. Fla. 2007). "Under Florida law, a cause of action for tortious interference does not exist against one who is himself a party to the business relationship allegedly interfered with." *Id.* Here, Plaintiff alleges his former employer, SSA, is a subcontractor of AST and A-M,[5] which are in turn contractors of DHS. (D.E. #6, ¶ 5, 6, 30–3).

---

[5]As noted above, AST disputes this assertion and claims that it is not a subcontractor of A-M.

9

In *Williams Elec. Co. v. Honeywell, Inc.*, a contractor hired by the Air Force sued its subcontractor for tortious interference with the contractor's relationship with the Air Force. 772 F.Supp. 1225, 1235–6 (N.D. Fla. 1991). The court granted summary judgment in favor of the subcontractor on the ground that at the time of the alleged interference, the subcontractor was already a party to the relationship. *Id.* at 1236. Thus, as a matter of law, the subcontractor could not tortiously interfere with the relationship. *Id.*

Similarly, Plaintiff has alleged that when "AMS" reported to the Department of Homeland Security that he failed the gun test, A-M and AST were already parties to his relationship with DHS. (D.E. #6, ¶6). They were not "disinterested third part[ies]" to the relationship, and, as a matter of law, could not have interfered with it. *Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986); *see also, Romika-USA*, 514 F.Supp. 2d at 1339 (finding that entity that acted as source of relationship between two others could not be held liable for tortious interference with it); *Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1537–8 (S.D. Fla. 1995) (holding that franchisor could not be liable for interference with relationship between franchisee and potential franchise purchasers); *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992) (holding that agent of corporate party to contract was not separate entity outside of contract that could tortiously interfere).

Accordingly, after a careful review of the record and the Court being otherwise

10

fully advised, it is

**ORDERED, ADJUDGED AND DECREED** that Defendants' Motions to

Dismiss the Amended Complaint (D.E. #12, D.E. #24) be and the same are hereby,

**GRANTED.**

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice

Building and United States Courthouse, Miami, Florida, this 1st day of October, 2010.

JAMES LAWRENCE KING
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

11

*cc:*

### *Counsel for Plaintiff:*

**Erwin Rosenberg, Esq.**
PO Box 416433
Miami Beach, FL 33141
786-299-2789
Fax: 305-397-1615
Email: erwinrosenberg@gmail.com
*ATTORNEY TO BE NOTICED*

### *Counsel for Defendant:*

**Christine Lynne Wilson, Esq.**
Jackson Lewis LLP
2 S Biscayne Boulevard
Suite 3500 One Biscayne Tower
Miami, FL 33131-1802
305-577-7600
Fax: 373-4466
Email: wilsonc@jacksonlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason Daniel Berkowitz, Esq.**
Jackson Lewis LLP
2 S Biscayne Boulevard
Suite 3500 One Biscayne Tower
Miami, FL 33131-1802
305-577-7600
Fax: 305-373-4466
Email: berkowitzj@jacksonlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

12